PER CURIAM.
First National Bank of the Florida Keys [hereinafter referred to as “the bank”] appeals from a non-final order denying its motion for reconsideration of the trial court’s order requiring it to deposit $212,-000.00 into the court registry. We reverse and remand.
The bank loaned the husband, Peter L. Rosasco, money which was secured by stock held in his name. As additional security for the loans, the husband gave the bank security agreements pledging and granting to the bank a security interest in the stock. The husband defaulted on his obligations to the bank and the bank sought to collect the amounts due to it and to foreclose its security interest in the stock.
Meanwhile, the husband and his wife, Florence A. Rosasco, were in the process of obtaining a dissolution of marriage. On September 27, 1991, the trial court held a hearing on the wife’s motion for emergency relief and addressed the wife’s claim that the stock was a marital asset and that her interest in the stock was in jeopardy due to a proposed sale. The bank was represented at this hearing. The trial court entered an order on October 4, 1991, requiring that the proceeds of the sale of the stock be placed in the registry of the court after satisfying the bank’s claims. Thereafter, the trial court ordered that the bank retain possession of the stock and advise the wife of any plans to sell the stock. On November 5, 1991, the trial court entered an order providing that the husband could sell the stock and that part of the proceeds would be used to pay off the bank and the remainder would be deposited in the registry of the court. On December 17, 1991, the bank filed a motion for an order permitting the sale of the stock. Then on May 4, 1992, the trial court ruled, contrary to its previous orders, that upon the sale of the stock, the first $212,-000.00 of the proceeds were to be deposited into the registry of the court. The bank filed a motion for reconsideration of the May 4th order, which was denied. The bank appealed.
The bank contends that the trial court erred in ordering it to deposit into the court’s registry the first $212,000.00 of the proceeds which may arise from the sale of the husband’s stock where it is a bona fide purchaser of the stock and has a perfected security interest in the stock. We agree.
A “bona fide purchaser” is defined as follows: (1) a purchaser, (2) for value, (3)in good faith and without notice of any adverse claim[1], and (4) who takes delivery of a certificated security in bearer form or in registered form, issued or indorsed to him or in blank. Section 678.302(l)(a), Fla. Stat. (1991). “A bona fide purchaser in addition to acquiring the rights of a purchaser (s. 678.301) also acquires his interest in the security free of any adverse claim.” Section 678.302(3), Fla.Stat. (1991).
In the instant case, the bank is a “purchaser” within the meaning of the Uniform Commercial Code as adopted in Florida because the bank took the stock as a pledge. Sections 671.201(32) and (33), Fla. Stat. (1991). The bank also became a “purchaser for value” when it accepted the stock certificates as collateral. Fidelity & Casualty Co. of N.Y. v. Key Biscayne Bank, 501 F.2d 1322, 1326 (5th Cir.1974); §§ 671.201(32), (33), and (44)(a), Fla.Stat. (1991). It is not disputed that the stock in question constitutes a “security” governed by the Uniform Commercial Code.
The husband executed three promissory notes and three security agreements in which he listed as collateral the 1500 shares of Florida Keys First State Bank *556 stock identified by certificates numbered 1254, 1255 and 1256, “all in the name of Peter L. Rosasco.” In fact, the bank retained possession of the actual stock certificates which list only the husband as the owner of the shares. Moreover, the certificates were endorsed in blank and without restriction on their negotiability or mention of the wife’s interest. These facts demonstrate that the bank had no notice of the wife’s adverse claims to the stock certificates. See In re Legel, Braswell Gov’t Sec., Corp., 648 F.2d 321, 328 (5th Cir.1981) (to constitute notice of adverse claim any restrictions on negotiability and transfer must be on stock certificates themselves, not on collateral documents); Fidelity, 501 F.2d at 1326 (fact that individual who presented certificates executed affidavit stating that he was the rightful owner was sufficient to establish that bank was without notice of adverse claim despite the fact that the certificates had been stolen); Cosmopolitan Credit & Inv. Corp. v. Blyth Eastman Dillon & Co., 507 F.Supp. 954 (S.D.Fla.1981) (party may not assert claim to stock if he has permitted the stock to be placed in commerce without any indication of his alleged adverse interest).
Thus, in accordance with these authorities, the bank is a bona fide purchaser with rights to the stock free of any possible adverse claims by the wife.
We, therefore, vacate the trial court’s order requiring the bank to deposit the first $212,000.00 of the stock sale proceeds into the court registry. We further remand this cause to the trial court for the entry of an order allowing the bank to dispose of the stock in accordance with its rights as a bona fide purchaser and secured creditor without interference from the wife and to apply the proceeds from the sale of the stock against the husband’s indebtedness to the bank.
Reversed and remanded with instructions.

. The "good faith” and "without notice” requirements have been found to be synonymous. Fidelity & Casualty Co. of N.Y. v. Key Biscayne Bank, 501 F.2d 1322, 1326 (5th Cir.1974).